Argued and submitted September 10, 1996, affirmed May 7, 1997

In the Matter of the Compensation of
Bradley S. Parker, Claimant.

FOSTER WHEELER CONSTRUCTORS, INC.
and Liberty Northwest Insurance Corporation,
*Petitioners,*

*v.*

Bradley S. PARKER,
*Respondent.*

(94-07649; CA A91873)

939 P2d 52

Patricia Nielsen argued the cause for petitioners. With her on the brief was Mannix, Nielsen, Yunker & Crawford, P.C.

Allison Tyler argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Employer seeks review of an order of the Workers' Compensation Board requiring employer to pay temporary total disability (TTD) compensation for a seven-week period, from June 7, 1994, to July 28, 1994, and assessing a penalty for employer's unreasonable delay in paying the TTD. The crux of employer's case is that it should not be required to pay TTD because, sometime after the seven-week period, it was determined that claimant already had become medically stationary and thereby became ineligible for the benefits. Claimant argues, and the Board held, that it does not matter that claimant *later* was found to have been medically stationary. We agree with claimant and the Board and therefore affirm.

Unfortunately, the relatively straightforward legal issue presented by this case comes to us packaged in a fairly complicated factual posture. We state those facts that are relevant as found by the Board.

In July 1992, claimant injured his left elbow while working for employer as a boilermaker. He first sought treatment in October 1992, from Dr. Swanson, who restricted claimant from doing any high rigging work for at least one month. Claimant stopped working. In January 1993, employer accepted claimant's injury as a disabling claim for left elbow epicondylitis and began paying claimant temporary partial disability, beginning November 3, 1992. In April 1993, Swanson concluded that claimant was not expected to be medically stationary for another three to six months and restricted claimant to work not involving his left hand. In July 1993, Swanson reported that claimant would have permanent impairment and would not be able to return to regular work without surgery. He released claimant to light-duty work, restricting claimant from any repetitive use of his left arm.

In August 1993, employer issued a back-up denial, based on what it believed to have been material misrepresentations about claimant's past medical history. Employer stopped paying time-loss benefits. Claimant worked at two temporary, light-duty jobs in September 1993, and October

1993, for six and three days respectively. Following that, he remained unemployed.

Meanwhile, claimant challenged employer's back-up denial. By order dated June 7, 1994, administrative law judge (ALJ) Peterson set aside the denial and ordered the claim to remain in accepted status. Employer appealed that order to the Board. While the appeal was pending, employer did not resume payment of time-loss benefits. At that point, however, there had been no determination that claimant had become medically stationary or that he had been released for regular work. Employer nevertheless believed that claimant's return to work in September and October of the previous year entitled it to terminate unilaterally the payment of such benefits. Claimant requested a hearing on employer's refusal to pay time-loss benefits.

On July 28, 1994, claimant saw employer's doctor, who reported that claimant was medically stationary and released him for regular work. Claimant's own doctor concurred in that report. Claimant returned to work shortly thereafter, and the claim was closed by determination order awarding benefits for time loss from October 1992, through July 28, 1994. Employer sought reconsideration of the determination order, arguing that claimant actually had become medically stationary even earlier, in August 1993.

On December 14, 1994, while the reconsideration of the determination order closing the claim and review of ALJ Peterson's order overturning the back-up denial still were pending, ALJ Thye held that employer was obligated to pay time-loss benefits through the medically stationary date of July 28, 1994, because, under ORS 656.313(1)(a)(A), time-loss benefits must continue to be paid until the earlier of either the date of closure or the date the order being appealed is reversed. Because the Board had not yet ruled on ALJ Peterson's order, the date of closure was, ALJ Thye concluded, the earliest date that employer could cease paying time-loss benefits.

Three weeks later, the department issued its decision on employer's request for reconsideration of the determination order closing the claim as of the July 28, 1994, medically stationary date. The department agreed with employer

and held that claimant became medically stationary on August 11, 1993. That decision was affirmed by ALJ Schultz, and claimant did not seek Board review. In May 1995, the Board affirmed ALJ Peterson's order overturning the back-up denial.

The Board then took up review of ALJ Thye's order requiring employer to pay time-loss benefits until July 28, 1994. Employer argued that, in the light of the subsequent order of ALJ Schultz, finding that claimant became medically stationary on August 11, 1993, it cannot be required to pay time-loss benefits beyond that date. In the alternative, it argued that it cannot be required to pay time-loss benefits beyond September 1993, at the latest, because that is when claimant returned to work. The Board rejected both arguments and upheld ALJ Thye's order requiring payment of time-loss benefits to July 28, 1994, and awarding penalties. It is that Board order that employer now asks us to review.

Employer asserts the same arguments to us that it asserted to the Board. It first contends that, when claimant returned to work in September 1993, his entitlement to time-loss benefits ended under ORS 656.268, and, because he never "reestablished" his entitlement to those benefits, employer thereafter was under no obligation to pay them. We disagree. ORS 656.268 provides, in relevant part:

"(3)   Temporary total disability benefits shall continue until whichever of the following events first occurs:

"(a)   The worker returns to regular or modified employment;

"(b)   The attending physician gives the worker a written release to return to regular employment;

"(c)   The attending physician gives the worker a written release to return to modified employment, such employment is offered in writing to the worker and the worker fails to begin such employment."

Under that statute, if a worker returns to regular or modified work, the obligation to pay TTD benefits ceases. That is not the end of the matter, however. ORS 656.268(3)(a) does not exist in a statutory vacuum. ORS 656.212 and related implementing regulations provide that, when a worker who has

returned to modified work remains partially disabled and is not medically stationary, the obligation to pay temporary *partial* disability (TPD) continues. In that regard, the version of OAR 436-60-030(11) that applied at the relevant time provided, in part:

> "Temporary partial disability compensation * * * shall continue until * * * [t]he job no longer exists or the job offer is withdrawn by the employer. This includes, but is not limited to, termination of temporary employment, layoff or plant closure. * * * *The worker is entitled to temporary total disability compensation as of the date the job is no longer available.*"

(Emphasis supplied.) In other words, returning to modified work relieves employer of the obligation to pay one type of time-loss benefits, TTD, and only for so long as the claimant continues at the modified work. When the modified work is no longer available, the worker again becomes entitled to TTD, until he or she is no longer entitled to the benefits under ORS 656.268.

In this case, claimant was entitled to receive, and was receiving, TTD before he took the six-day job in September 1993, and the three-day job in October of the same year. Under ORS 656.268(3)(a), that relieved employer of the obligation to pay TTD. But because claimant had not yet been released for regular work, he was entitled to TPD under ORS 656.212. When the temporary jobs were no longer available, claimant remained unemployed and not yet released for regular work and, under OAR 436-60-030(11), he once again was entitled to TTD, without having to "reestablish" his entitlement. Thus, at the time of the hearing before ALJ Peterson, and later at the time of the issuance of his June 7, 1994, order, claimant was entitled to TTD. Under ORS 656.313(1)(a)(A), benefits that accrue from the date of such an order are not stayed pending an appeal of the order.

Employer insists that, even if that is so, it did not pay those benefits, and since then, it has been determined conclusively that claimant became medically stationary nearly a year before that. Relying on our opinion in *Lebanon Plywood v. Seiber*, 113 Or App 651, 833 P2d 1367 (1992),

employer argues that the Board cannot order it to pay benefits to which claimant was not entitled. Again, we disagree. ORS 656.313(1)(a)(A) provides that, among other things, requesting Board review of an ALJ's order stays the payment of the compensation appealed except for

> "temporary disability benefits *that accrue from* the date of the order appealed from until closure under ORS 656.268 or until the order appealed from is itself reversed, whichever event first occurs."

(Emphasis supplied.) In *Lebanon Plywood*, the claimant, who had been receiving temporary disability benefits, had become medically stationary, but the claim was not closed until months later due to processing delays. There was no appeal, however, until long after the closure. Thus, no benefits accrued from the date of the order, and the exception to the stay described in ORS 656.313(1)(a)(A) did not apply.

In contrast, in *Anodizing, Inc. v. Heath*, 129 Or App 352, 879 P2d 218 (1994), the claimant's temporary disability benefits were due the date that they were ordered by the ALJ. When the employer appealed the order, the exception to the stay that is described in ORS 656.313(1)(a)(A) did apply, as the claimant accrued benefits during the pendency of the appeal, even though ultimately it was determined that the claimant was not entitled to them.

This case is controlled by *Anodizing*, not *Lebanon Plywood*. When ALJ Peterson issued his order on June 7, 1994, claimant was entitled to TTD, as we have described. Thus, his entitlement to those benefits accrued during the pendency of the appeal. The fact that, at some later date, claimant ultimately was determined not to have been entitled to the benefits does not relieve employer of the obligation to pay them in accordance with the statute. We conclude therefore that the Board correctly determined that claimant was entitled to TTD payments from June 7, 1994, and that it correctly awarded a penalty and attorney fees for the failure to pay those benefits.

Affirmed.